UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DELORES M. BROOKS, | } |
| Plaintiff, | } |
| v. | } CASE NO. 2:03-CV-2296-RDP |
| THE COUNTY COMMISSION OF JEFFERSON COUNTY, ALABAMA, | } |
| Defendant. | } |

## MEMORANDUM OPINION

The court has before it Defendant's Motion for Summary Judgment (Doc. # 26). The motion has been fully briefed and was under submission as of June 1, 2005.  (Docs. # 7, 13, 25).

Plaintiff Delores M. Brooks, a White employee in the Jefferson County Revenue Department, claims that she was denied a promotion because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended. (Complaint). For the reasons outlined below, Defendant's Motion for Summary Judgment is due to be granted because there are no disputed issues of material fact and Defendant has demonstrated that it is entitled to judgment as a matter of law.

**I.     Legal Standards for Evaluating a Summary Judgment Motion**

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-08 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).[1]

---

[1] Here, Plaintiff has presented only circumstantial evidence of discrimination. Plaintiff points to a July 2003 news article in *The Birmingham News*, which quoted the decisionmaker, Commissioner Larry Langford, as saying that "he was appalled when he became a county commissioner that there were no black or female department heads - more than 20 years after a court order from a discrimination lawsuit." (Plaintiff's Affidavit - Attached News Article as an Exhibit; *see also* Sayler Dep. p. 37). This alleged isolated comment, made eight months after the November 2002 decision not to promote Plaintiff, is not direct evidence. *Standard v. A.B.E.L., Inc.*, 161 F.3d 1318, 1329 (11th Cir. 1998)("[R]emarks . . . unrelated to the decisionmaking process itself are not direct evidence of discrimination."). Moreover, evidence that is subject to more than one interpretation, *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 n. 2 (11th Cir.1996), or "devoid of any meaningful context," *A.B.E.L.,* 161 F.3d at 1329, cannot constitute direct evidence. As Defendant notes, "[p]ublic figures and politicians make comments regarding the advancement of minorities on a regular basis, particularly in the South where, historically, segregation was institutionally urged. Bringing awareness of previous discrimination does not mean that every time a person of authority chooses to hire a minority that they did so based on race." (Doc. # 27, at 2). Direct evidence is "evidence, which, if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997). This is not a direct evidence case.

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of establishing a *prima facie* case of discrimination. Second, once the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* show that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 801-02; *Burdine*, 450 U.S. at 251-54.

## II.    Relevant Undisputed Facts[2]

In approximately 1990, Plaintiff was hired as a tax agent with the Jefferson County Tax Collector's Office. (Plaintiff Dep. p. 25-27). Several years later, Plaintiff made a lateral transfer to the position of auditor within the Jefferson County Revenue Department. (Plaintiff Dep. p. 30-31). She was promoted to the position of Senior Auditor, and later promoted to Principal Auditor, the position that she currently holds. (Plaintiff Dep. p. 33-36). As Principal Auditor, Plaintiff has control over a significant amount of County funds, and she makes investments of interest funds, supervises the accounting staff, maintains about fifteen bank accounts, and advises other revenue branches. (Plaintiff Dep. p. 35). Plaintiff has never been disciplined or otherwise sanctioned in her employment with Defendant. (Plaintiff Dep. p. 38-39).

---

[2] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

In April 2002, the Budget Officer ("BO") position, the highest level managerial position in Defendant's Budget Management Office ("BMO"), became available after the retirement of Joe Kerr. (Sayler Dep. p. 17-18, 78; Hulsey Dep. p. 119-20; Doc. # 28, Ex. B, ¶ 11). The BO reports to the Assistant Finance Director, who in turn reports to the Finance Director. (Sayler Dep. p. 17-18; Hulsey Dep. p. 119-20). In anticipation of filling the position, the Jefferson County Personnel Board prepared a "Certificate of Eligibles," a list of candidates who were eligible for consideration. (Hulsey Dep. p. 15-16). In the meantime, Tracie Hodge, an African-American female and the eventual successful candidate for the permanent BO position, served as interim BO. (Sayler Dep. p. 78).

After receiving the Certificate of Eligibles, Travis Hulsey, Assistant Finance Director, reviewed the seventeen applications for the BO position and interviewed the top three candidates. (Doc. # 28, Ex. B, at ¶¶ 5, 9). Hulsey created a spread sheet assigning the interviewees points based upon the categories of education, experience, skills, and personal. (Doc. # 28, Ex. E; Hulsey Dep. p. 23-26). Plaintiff met all objective requirements for the BO position. (Plaintiff's Affidavit; Sayler Dep. p. 73-74). Hodge received an overall score of 80.6 out of 100 on Hulsey's spreadsheet, while Plaintiff received an overall score of 76.4. (Doc. # 28, Ex. E). Plaintiff recalls that during the interview process for the position, both Hulsey and Steve Sayler, the Director of Finance, questioned Hodge's communication skills. (Plaintiff Dep. p. 90-93). Sayler told Plaintiff that he believed that she – more so than Hodge – had a good working relationship with other department heads and had the knowledge, skills and abilities to perform the job. (Plaintiff Dep. p. 72-73). Both Sayler and Hulsey indicated to Plaintiff that the BO job duties were comparable to her duties in the Revenue Department. (Plaintiff Dep. p. 96).

On November 1, 2002, Sayler offered Plaintiff the BO position and indicated that he had taken the Personnel Action form to Commissioner Gary White for him to approve. (Plaintiff Affidavit). Although a department head like Sayler "can make an offer on a position, [] it doesn't become final and effective until the appointing authority signs off on it." (Hulsey Dep. p. 34). Plaintiff told Sayler that she accepted the offer, and she was told that she would begin on December 1, 2002. (Plaintiff's Affidavit).

Although Commissioner White received a Personnel Action form appointing Plaintiff to the BO position (White Dep. p. 23-24), he decided not to sign it. White was troubled by "two red lights" regarding Plaintiff's potential appointment. (White Dep. p. 26-27). First, he became suspicious about Plaintiff's appointment being "at the very last minute" before White was slated to leave the Commissioner position,[3] and he questioned Sayler's motives in "personally coming up [to his office to inquire] about the [Personnel Action form]." (White Dep. p. 15-18, 26-27). Second, Randy Godeke, the Director of Revenue and Plaintiff's supervisor, told White that Plaintiff was not "doing a good job" and that he did not believe that she could "handle that [BO] job." (White Depo. p. 26). Because of his concerns, White decided to let the newly elected Commissioner "make the decision because he was going to have to work with [the new BO] for the next four years." (White Dep. p. 18).

On Tuesday, November 5, 2002, Larry Langford was elected as Jefferson County Commissioner. (Langford Dep. p. 6-8). As the President of the Jefferson County Commission, Langford was the appointing authority for the BO position. (Langford Dep. p. 6-8; Hulsey Dep. p.

---

[3] A new Commissioner was to be elected November 5, 2002. (Langford Dep. p. 6).

5

15-16). After he took office, Langford chose to appoint Hodge, not Plaintiff, to the BO position. (Langford Dep. p. 8-9).

Langford met Hodge prior to his decision to select her because, as interim BO, she was the point person for the BMO and answered Langford's budget questions during his time of transition into the Commissioner position. (Langford Dep. p. 11-12). He also talked with Hodge specifically about the BO position before selecting her. (Langford Dep. p. 12-13). Langford questioned why Sayler had not recommended Hodge for the position given that she was on the Certificate of Eligibles and had been performing the job as interim BO. (Langford Dep. p. 14-15). In response, Sayler admitted that Hodge was qualified and had been doing the job for several years, but he told Langford that he believed she lacked presentation skills. (Langford Dep. p. 15). Langford asked Sayler if he had ever assigned her those presentation duties to see how she would perform, and Sayler told him "no." (Langford Dep. p. 15).

Langford selected Hodge because he prioritizes "promot[ing] from within" (Sayler Dep. p. 35-37), which he described as "if someone is doing the job and they have been doing it for a couple of years, they ought to get the job first." (Langford Dep. p. 15). Other than Hodge, Langford did not interview Plaintiff or any of the other persons on the Certificate of Eligibles (Langford Dep. p. 13; Plaintiff Dep. p. 111-12), nor does he recall reviewing Hulsey's spreadsheet of evaluations before selecting Hodge for the position. (Langford Dep. p. 17; Hulsey Dep. p. 53, 55-56, 83, 111-12).

Sayler informed Plaintiff that Langford had selected Hodge, and not her, for the BO position. (Plaintiff Affidavit). Godeke, Plaintiff's supervisor, also told her that "her future" was in the Revenue Department and not in Finance. (Plaintiff Affidavit; Langford Dep. p. 6). Langford was

officially sworn in on Tuesday, November 12, 2002 (Langford Dep. 6-10), and Hodge was offered the BO position on Friday, November 15, 2002. (Doc. # 30, Ex. 5).

On March 9, 2003, Plaintiff filed a Charge of Discrimination with the EEOC alleging discrimination based on her race. (Doc. # 1, Ex. A).[4] Plaintiff received a Dismissal and Notice of Rights letter from the EEOC dated May 19, 2002. (Doc. # 1, Ex. C). On August 19, 2003, Plaintiff filed a complaint alleging Defendant discriminated against her when it failed to promote her because of her race. (Doc. # 1, ¶ 11).[5]

### III. Applicable Substantive Law and Discussion

In order to establish a *prima facie* case of disparate treatment in promotions based on race, Plaintiff must show: (1) she is a member of a protected class; (2) she suffered an adverse job action; (3) her employer treated similarly-situated employees outside her classification more favorably; and (4) she was qualified to do the job. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *Coutu v. Martin Cty. Bd. of Cty. Commissioners*, 47 F.3d 1068, 1073 (11th Cir. 1995).

Plaintiff argues that, because of her race, she was not promoted to the BO position in November 2002. Defendant argues that Plaintiff has failed to make out a *prima facie* case because she cannot establish that Hodge, the successful candidate, was equally or less qualified. The court will assume that Plaintiff has established a *prima facie* case of discrimination related to the

---

[4] Although Plaintiff's EEOC charge also alleged age discrimination, she does not make that claim in this case.

[5] Although Plaintiff's statement of facts also represents that since filing her lawsuit, Plaintiff has applied for, but been denied, other positions within the revenue department, Plaintiff does not argue that she has suffered retaliation, and there is no retaliation claim in this case. (Docs. # 1, 29).

promotion decision at issue, *see Walker v. Mortham*, 158 F.3d 1177, 1187-93 (11th Cir. 1998) (holding that when an employer relies upon the successful candidate's qualifications as its reason for promotion, a comparison of Plaintiff's and successful candidate's qualifications is considered at the pretext stage, not during analysis of the *prima facie* case), and focus on the parties' respective arguments regarding whether Defendant has articulated legitimate, non-discriminatory reasons for the selection of Hodge for the position and whether Plaintiff is able to present substantial evidence showing such reasons are pretextual.

### A.   Defendant's Articulated Reason

Defendant's overarching reason for selecting Hodge for the BO position is that Langford believed Hodge to be more qualified for the position based on her experience as interim BO and his observations of her actual performance of the job. (Langford Dep. p. 11-13, 15). Specifically, Langford had the opportunity to work with Hodge during his transition to Commissioner, and his "promote from within" philosophy is that "if someone is doing the job and they have been doing it for a couple of years, they ought to get the job first." (Langford Dep. p. 11-13, 15).[6]  Langford emphasized that "[n]othing beats hands-on experience." (Langford Dep. p. 16-17).  The court finds that Defendant has met its "exceedingly light" burden to articulate a nondiscriminatory reason for the adverse action.  *Walker v. NationsBank*, 53 F.3d 1548, 1556 (11th Cir.1995).

---

[6] Plaintiff claims that Langford's "promote from within" reasoning applied equally to her as a County employee and therefore is not a legitimate reason for selecting Hodge over Plaintiff. Plaintiff's argument ignores Langford's definition of "promote from within," which is entirely consistent with his selection of Hodge. Langford believed that "if someone is doing the job and they have been doing it for a couple of years, they ought to get the job first." (Langford Dep. p. 11-13, 15). It is undisputed that Hodge, unlike Plaintiff, was a BMO employee and the interim BO at the time of decision (Plaintiff worked in the Department of Revenue). (Plaintiff Dep. p. 33-36; Sayler Dep. p. 78).

B.     **Plaintiff's Evidence of Pretext**

Plaintiff disagrees with Langford's assessment; in Plaintiff's eyes she was more qualified for the position than Hodge as evidenced by the fact that she was selected first by Sayler for the position. (Plaintiff Affidavit).[7] Plaintiff argues that Sayler's choice "would make a reasonable person conclude that [Hodge] was obviously not capable of handling the duties and [that] Sayler's criticisms of her were to be taken seriously." (Doc. # 29, at 18). Plaintiff essentially asks the court to engage in a *pro hac* comparison of the relative qualifications of the two candidates despite clear Eleventh Circuit law frowning upon such comparisons because they confuse honest but different evaluations of qualifications with intentional discrimination. *See e.g., Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253-54 (11th Cir. 2000). "[F]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'" *Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir. 2000)(en banc).

Disparities in qualifications are not evidence of discriminatory intent unless they "are so apparent as virtually to jump off the page and slap you in the face." *Lee,* 226 F.3d at 1253-54. In this case, applying that demanding standard, Plaintiff cannot show pretext. It is undisputed that for some period of time Hodge had been serving as interim BO, and that during that time Langford, the newly elected Commissioner, called on Hodge to answer budget questions while he transitioned into his position. (Langford Dep. 11-15). Langford knew that "[Hodge] had been doing the budgets for the county for several years and that she had all the information on it," and Sayler confirmed that

---

[7] That Plaintiff was selected first for the position did not entitle her to the post. The evidence is clear that although the Director of Finance may have offered her the position, it was a tentative offer that was not "final and effective until the appointing authority sign[ed] off on it." (Hulsey Dep. p. 34).

Hodge was qualified for the job. (Langford Dep. p. 14-15). When making the decision to select Hodge, Langford focused on Hodge's "hands-on experience," which he deemed to be far more important than "degrees or something that's written on paper." (Langford Dep. p. 16-17). Although Plaintiff was undoubtedly qualified for the BO position, given Langford's preference for experience rather than academic accolades, Plaintiff's qualifications were not so superior to Hodge's "that no reasonable person, in the exercise of impartial judgment, could have chosen [Hodge] over [P]laintiff for the job in question." *Lee,* 226 F.3d at 1254.

In an attempt to show pretext, Plaintiff claims that Langford filled the BO position without any knowledge as to the skills and abilities of the candidates for hire. (Doc. # 29, at 13-14; Plaintiff Dep. p. 75). To the contrary, although Langford does not recall reviewing Hulsey's spreadsheet evaluations before selecting Hodge for the position (Langford Dep. p. 17; Hulsey Dep. p. 53, 55-56, 83, 111-12), he did witness first-hand Hodge's ability to perform the BO position when he worked with her as interim BO. (Langford Dep. p. 11-12).[8] Although Langford may not have been familiar with the paper qualifications of the candidates, he witnessed Hodge fulfilling the duties of the position.

Next, Plaintiff points to the Commissioner's involvement in the decision as evidence that the selection of Hodge was based on race. (Doc. # 29, at 15 (collecting district court cases and arguing

---

[8] Plaintiff insinuates that Langford must be lying about having observed Hodge at work because Langford testified that he did not meet her until after he was "sworn in" on November 12 (Langford Dep. p. 11), while Plaintiff believes that she was told on November 8 that Hodge had been selected for the position. (Plaintiff's Affidavit). Langford testified that while he could not recall the "exact date" when he appointed Hodge, he did meet her prior to her appointment when he worked with her on budget items. (Langford Dep. p. 6-14). The documentary evidence supports Langford's recollection. The Certificate of Eligibles shows that Hodge was offered the BO position on Friday, November 15, 2002, after Langford was sworn in. (Doc. # 30, Ex. 5).

that "substantial irregularities or improprieties in a hiring process are strong indicators of an improper, racial motive")). Plaintiff maintains that it is the normal practice for department heads to have the primary responsibility for hiring and promotion, while the commissioners simply "rubber stamp" those decisions. (*Id.*) Although the undisputed evidence indicates that promotion decisions are *generally* made by department heads (Collins Dep. p. 13-14; White Dep. p. 8), Commissioner Langford's involvement was not abnormal given the position that was at issue. Former Commissioner White testified that on several occasions he became involved in high profile positions. (White Dep. p. 8). This is not evidence of pretext.

Finally, Plaintiff claims that Defendant's noncompliance with Jefferson County Personnel Board Rules and Regulations in making the BO decision reveals pretext. Plaintiff points to Rule 11.2c, which provides that the "Appointing Authority [] has ten (10) days from the issuance of the Certification list [also known as Certificate of Eligibles] to make an appointment or provide the Director with written notification that the requisition has been withdrawn, and the reasons for the withdrawal." (Doc. # 30, Ex. 3). In this case, the Certificate of Eligibles was certified on August 22, 2002, while the offer to Hodge was made on November 15, 2002 – well outside of ten days. (Doc. # 30, Ex. 5).

Plaintiff's argument is flawed for several reasons. First, even if Defendant failed to follow Personnel Board rules in making the BO decision, that in and of itself is not sufficient evidence of unlawful discrimination. *See Mitchell v. USBI*, 186 F.3d 1352, 1355 (11th Cir. 1999) (holding that, standing alone, deviation from a company policy does not demonstrate discriminatory animus); *see also Berg v. Florida Dep't of Labor and Employment Security*, 163 F.3d 1251, 1255 (11th Cir.1998) (finding that plaintiff failed to support claim of ADA violation by arguing that state agency had

failed to apply its policies correctly, absent showing that policies were misapplied because of his disability). Moreover, the undisputed evidence indicates that the above-cited Personnel Board rule was "very loosely enforced, if at all." (Hulsey Dep. p. 52). Finally, Defendant's noncompliance with Rule 11.2c simply does not demonstrate race discrimination – even Sayler's November 1, 2002 initial job offer to *Plaintiff* violated the 10-day rule. (*See* Plaintiff Affidavit; Doc. # 30, Ex. 5).

For these reasons, the court finds that Plaintiff has not adduced sufficient evidence to prove either "that intentional discrimination did indeed motivate the defendant or [] to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons." *Reeves v. Sanderson Plumbing Prods. Inc.*, 120 S. Ct. 2097, 2108-09 (2000). Accordingly, summary judgment is due to be granted on Plaintiff's promotion claim.

### IV. Conclusion

For the reasons stated above, Defendant's motion for summary judgment is due to be granted. The court finds that no genuine issues of material fact remain for trial as to Plaintiff's claims and that Defendant is entitled to judgment as a matter of law. A separate Final Judgment will be entered.

**DONE** and **ORDERED** this    23rd    day of August, 2005.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE